**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HADEN KIRKPATRICK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-cv-13435 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| O'KEEFE MEDIA GROUP, LLC, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Haden Kirkpatrick went on a date, and it didn't end well. His would-be love interest, Sabrena Shabandir, secretly recorded him sounding off about State Farm's business practices. He shared his views about how the company handled California's wildfires, and he offered hot takes about the company's hiring practices, too.

As it turns out, Kirkpatrick was an executive at State Farm at the time. And Shabandir, it seems, had something up her sleeve, literally and figuratively. A hot mic recorded his hot takes during the hot date.

Sharing perspectives on insurance coverage for wildfires may or may not be the best strategy for flirting on a first date. Maybe she brought it up. Or maybe he got stumped for content, and the name of the restaurant sparked a new topic of conversation. Of all things, they dined at a restaurant named . . . wait for it . . . Wildfire.

In any event, Kirkpatrick went with it, and Shabandir recorded it. She captured video, too. It shows the two of them sitting at a bar, with Kirkpatrick sounding off, and Shabandir twirling pasta in her left hand armed with five long purple fingernails, with a nearby Manhattan cocktail witnessing it all.

Shabandir gave the recordings to James O'Keefe of O'Keefe Media Group (which goes by "OMG"), who proceeded to put the recordings on its website and on YouTube. When State Farm got wind of the recordings, the company promptly fired Kirkpatrick. OMG's publication of the recordings created an "OMG" moment in Kirkpatrick's personal and professional life.

It's not obvious why Shabandir recorded Kirkpatrick in the first place. Maybe it was all a honey trap, designed to get Kirkpatrick talking about a matter of public interest. After all, they met on a dating app, so maybe Shabandir targeted Kirkpatrick with the goal of sweet-talking him into doing some trash-talking.

Or maybe Shabandir is simply a lousy date. Either way, Kirkpatrick probably had the worst date of his life, and in the end, he found himself without a job.

Kirkpatrick responded by suing Shabandir, James O'Keefe, and O'Keefe Media Group in state court, bringing state-law claims. Defendants, in turn, removed the case to federal court. They invoked this Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

Kirkpatrick countered by filing a motion to remand. As he sees things, there is no diversity of citizenship, so there is no subject matter jurisdiction.

Diversity jurisdiction requires complete diversity of citizenship between the parties. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). "Complete diversity exists only if none of the defendants has the same citizenship as any plaintiff." *See City of East St. Louis v. Netflix, Inc.*, 83 F.4th 1066, 1070 (7th Cir. 2023).

Courts assess the diversity of citizenship as of the moment when the complaint first arrived in the federal courthouse. So, in cases filed in federal court on day one, the day of filing the complaint is what matters. *See Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 570–71 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.' This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure.") (citation and footnote omitted). But in removed cases (like this one), courts consider whether jurisdiction existed on the day of removal. *See* 16 MOORE'S FEDERAL PRACTICE § 107.21 (3d ed. 2025) ("Federal jurisdiction is determined based on the claims in the state court complaint as they existed at the time of removal.").

In reality, both rules stand for the same proposition. A court must have subject matter jurisdiction at the moment when the complaint hits the docket in the federal courthouse.

There is an added wrinkle in removal cases that involve diversity jurisdiction. Complete diversity must exist *both* at the time of filing the case in state court *and* at the time of removal. *See Altom Transport, Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 420 (7th Cir. 2016) ("Cases that reach the federal court by removal are not so straightforward, but this court has held that diversity must exist both at the time of the original filing in state court and at the time of removal."); *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004); *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776 (7th Cir. 1986) (holding that "diversity must exist both when the suit is filed – as the statute itself makes clear, see 28 U.S.C. § 1441(a) – and when it is removed").

"But the practice in removed cases is somewhat different than it is for actions filed originally in the federal courts, in which diversity is determined on the basis of the parties' citizenship at the time of commencement of the action. In contrast, a long line of authority supports the proposition that when diversity of citizenship is the basis of removal, diversity must exist not only at the time the action was filed in the state court, but also at the time the case is

2

removed to federal court. Thus, if, after filing of the complaint in state court, the defendant changed its citizenship so that it became diverse from the plaintiff at the time of removal to federal court, removal would be improper." *See* 14 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3723 (4th ed. 2026). Otherwise, a defendant theoretically could get sued, and then move to another state to create diversity and thus gain the right to remove.

The question at hand, then, is whether Kirkpatrick was a citizen of a different state than all of the defendants on the day of the filing of the state court complaint *and* on the day of removal. If so, then there is a complete diversity of citizenship, and the case can stay here. If not, then the case needs to go back to state court.

Kirkpatrick is a citizen of Illinois. And O'Keefe is a citizen of Florida. So far, so good.

O'Keefe Media Group, LLC is a limited liability company, so it is a citizen wherever its members are citizens. *See Belleville Catering Co. v. Champaign Market Place, LLC*, 350 F.3d 691, 692 (7th Cir. 2003). "[T]he citizenship of an LLC is the citizenship of each member – traced through as many levels as necessary until reaching a natural person or a corporation." *City of East St. Louis*, 83 F.4th at 1070.

As an aside, the Seventh Circuit has made clear – again and again and again – that a limited liability company is a citizen wherever its members are citizens. *See, e.g.*, *West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 829 (7th Cir. 2020) ("We've held repeatedly that there's no such thing as a [state name here] partnership or LLC, that only the partners' or members' citizenships matter, and that their identities and citizenships must be *revealed*.") (emphasis in original); *Martin v. Living Essentials, LLC*, 653 F. App'x 482, 485 (7th Cir. 2016) ("[T]he home 'base' of a limited liability company, or LLC, is irrelevant, given that an LLC has the citizenship of each of its members."); *Thomas v. Guardmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) ("For diversity jurisdictional purposes, the citizenship of an LLC is the citizenship of each of its members."); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) ("[T]he citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members."). A complete string cite would consume an entire ball of twine.

But for whatever reason, that principle has not yet fully soaked into the bar, despite a deluge of rulings that have rained down from the Seventh Circuit over a span of decades. All too often, lawyers file complaints that say where an LLC is "incorporated" and has its principal place of business. The misperception that an LLC is treated like a corporation has proven difficult to eradicate.

A limited liability company is a different animal than a corporation. A corporation is a citizen where it is incorporated and where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77 (2010). But that's not true of an LLC.

It makes no difference where an LLC is registered or where it has its principal place of business. An LLC is treated like a partnership. A partnership has the citizenship of its partners.

3

*See Carden v. Arkoma Associates*, 494 U.S. 185 (1990). And by the same token, an LLC has the citizenship of its members. *See Cosgrove*, 150 F.3d at 731.

Defendants fell into that trap. The notice of removal says that O'Keefe Media Group, LLC is a "Delaware Limited Liability Company organized in the State of Delaware with its principal place of business in West Palm Beach, Palm Beach County, Florida." *See* Notice of Removal, at ¶ 5(b) (Dckt. No. 1).

That's irrelevant. But the parties later sorted out the jurisdictional facts when briefing the motion to remand.

As it turns out, O'Keefe Media Group, LLC has only one member, James O'Keefe. O'Keefe is a citizen of Florida, so O'Keefe Media Group, LLC is a citizen of Florida, too.

The last defendant is Shabandir herself. The parties disagree about whether Shabandir is a citizen of Illinois. That's the whole jurisdictional ballgame. If Shabandir is a citizen of Illinois, then there is no complete diversity, because Kirkpatrick is a citizen of Illinois, too. Plus, if Shabandir is a citizen of Illinois, then she can't remove the case under the forum-defendant rule. *See* 28 U.S.C. § 1441(b)(2).

For diversity purposes, "it has long been established that natural persons are typically a citizen of the state in which they reside or – to be more precise – are 'domiciled.'" *See Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021). A person's domicile depends on two facts: physical presence, and an intent to remain. *See Salem v. Egan,* 803 F. App'x 928, 931 (7th Cir. 2020). A court cannot establish a party's domicile without finding both. *See Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012) (noting that allegations of residence alone are insufficient to establish domicile); *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996) (noting that intent without physical presence is insufficient to establish domicile).

Domicile "means the place where a person intends to live in the long run." *RTP LLC v. ORIX Real Est. Cap., Inc.*, 827 F.3d 689, 692 (7th Cir. 2016). It is the state that an individual "considers his permanent home." *See Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991). A person has only one domicile, and it isn't necessarily where that person might reside. *See Salem*, 803 F. App'x at 931 ("'[O]ne can reside in one place but be domiciled in another.'") (alteration in original) (quoting *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)).

"[I]n this age of second homes and speedy transportation, picking out a single state to be an individual's domicile can be a difficult," fact-intensive inquiry. *See Galva*, 924 F.2d at 730. Indeed, "[i]n situations where an individual has multiple residences in different states, the test can turn into a complex inquiry into an individual's intent." *Wat Buddha-Dhamma, N.F.P. v. Stang*, 2010 WL 3210586, at *4 (N.D. Ill. 2010) (Dow, J.) (citing *Galva*, 924 F.2d at 730).

Courts can take into account a person's "entire course of conduct." *See Kemph v. Mica Creek-Sagamore Cap. Partners*, 2014 WL 4701173, at *2 (N.D. Ill. 2014) (citing *Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993)). No single factor is dispositive. *See Galva*, 924 F.2d at 730.

Here, the amorous outing took place at the bar at a fancy steakhouse in Illinois in January 2025. *See* Cplt., at ¶¶ 7–8 (Dckt. No. 1-1). Kirkpatrick lost his job in March 2025, the day before the recordings went public. *Id.* at ¶ 22.

Those dates are important to the backstory, but they aren't important for jurisdiction. The dates that matter are the date of the filing of the complaint in state court (on August 27, 2025), and the date of removal to federal court (on November 3, 2025).

The question is where Shabandir was domiciled on those dates. Shabandir needs to establish that she was not a citizen of Illinois on August 27, 2025 (when the complaint was filed in state court) and on November 3, 2025 (when the case was removed to federal court).

Shabandir submitted a declaration saying that she moved to Arizona in June 2025. *See* Declaration, at ¶ 2 (Dckt. No. 1-2). At that point, she made the Grand Canyon State her "permanent home." *Id.*

She brought her personal belongings with her to Arizona. *Id.* at ¶¶ 4–5. She has "no plans or desire to return to Illinois to live." *Id.* at ¶ 5.

Shabandir submitted a few documents to support her Arizona domicile. She signed a lease for an apartment in Scottsdale, Arizona on May 15, 2025, and the lease went into effect on June 3, 2025, a few months before removal. *See* Lease (Dckt. No. 15-1, at 2, 63–65 of 65). She also submitted a utility bill showing usage as of July 2025. *See* Utility Bill (Dckt. No. 15-2). And she filed her change-of-address form, too, which asked the U.S. Postal Service to forward her mail to Arizona as of August 2025. *See* Change-of-Address Form (Dckt. No. 15-4).

Shabandir also filed bank records that show her living her best life in Arizona as of October 2025, the month before removal. For example, she went to Starbucks five times in Tempe from October 27 to October 31. *See* Bank Records (Dckt. No. 16-3, at 3 of 11). She also pounded the Arizona pavement by going to Costco and Safeway in Phoenix, Hobby Lobby in Scottsdale, and Prince Street Pizza in Tempe. *Id.*

The declaration offered some unnecessary tidbits about the backstory, including what she didn't like about the Prairie State. She lived with her parents on the day of the romantic rendezvous with Kirkpatrick. But she "left Illinois for personal and political reasons." *See* Declaration, at ¶ 6 (Dckt. No. 1-2). She "felt pushed away by [her] family in Illinois, and [she] had become disillusioned with the local culture and relationships in [her] former Illinois community." *Id.* The weather apparently didn't factor into her decision-making.

5

She works in Arizona, too, in a "travel-nurse work capacity." *Id.* at ¶ 7. And apparently nursing isn't her only gig. She is "also employed with O'Keefe Media Group to help with special undercover journalism assignments." *Id.*

Shabandir acknowledged that she had not yet changed her Illinois driver's license, or vehicle registration, or voter registration to Arizona. *Id.* at ¶ 10. But she explained that she simply hasn't gotten to it yet.

Viewed as a whole, that's a lot of ammunition to conclude that Shabandir resides in Arizona with an intent to remain there. In the motion to remand, Kirkpatrick pressed Shabandir for more details, such as a copy of her lease. So Shabandir filed the lease as an exhibit to her response brief.

Kirkpatrick points out that Shabandir co-owns a house in Illinois with her mother. That may be true. But ownership of property doesn't matter unless a person resides there. And on this record, there is no reason to think that Shabandir resides in that home. There is every reason to conclude that she doesn't.

Kirkpatrick also believes that the timing of the move is "suspicious." Kirkpatrick points out that a violation of the Illinois eavesdropping statute is a crime, and the police in Glenview, Illinois visited Shabandir's home on April 22, 2025, only a few weeks before Shabandir signed a lease in Arizona. *See* Reply (Dckt. No. 21). Kirkpatrick believes that "Shabandir relocated to Arizona to avoid legal trouble, rather than permanently establish a home there." *Id.* at 2.

Maybe, just maybe, Shabandir hightailed it out of Illinois in a fraught effort to escape potential criminal liability. Maybe Shabandir tried to get out of Dodge by getting out of Illinois. No matter. If an "individual really and truly intends to remain in his state of residence, the motive, even if it is to confer or thwart diversity jurisdiction, is irrelevant." *See Dakuras v. Edwards*, 312 F.3d 256, 259 (7th Cir. 2002).

The question is not whether Shabandir had a good reason or a bad reason to move away. The question is whether Shabandir resides in Arizona with an intent to remain. And on this record, the facts suggest that she has staked out a new home in the Southwest.

Based on the record as a whole, the Court finds that Shabandir was a citizen of Arizona when Kirkpatrick filed the complaint in state court and when Defendants removed the case to federal court. So there is complete diversity of citizenship. The parties agree that the amount in controversy exceeds $75,000. As a result, this Court has diversity jurisdiction.

For those reasons, the motion to remand is hereby denied.

Date:   May 21, 2026

Steven C. Seeger
United States District Judge